**UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| In re : | |
| : | **Chapter 13** |
| **ERMA C. FUNCHES,** : | |
| : | **Bky. No. 07-13883ELF** |
| Debtor. : | |
| : | |
| **ERMA C. FUNCHES and** : | |
| **WILLIAM C. MILLER,** : | |
| : | |
| Plaintiffs, : | |
| : | |
| v. : | |
| : | |
| **HOUSEHOLD FINANCE CONSUMER** : | |
| **DISCOUNT COMPANY,** : | **Adv. No. 07-00270ELF** |
| : | |
| Defendant. : | |
| : | |

# O P I N I O N

**BY:  ERIC L. FRANK,  U.S.  BANKRUPTCY JUDGE**

## TABLE OF CONTENTS

**I.  INTRODUCTION**

**II. BACKGROUND**

    **A.  The Main Bankruptcy Case - Overview**

    **B.  The State Court Foreclosure Action**

    **C.  The AP Complaint and HFC's Motion to Dismiss**

**III.  THE PARTIES' ARGUMENTS**

    **A.  Initial Briefing**

**B.  The Hearing and Post-Hearing Briefing**

    **1.  identity of the "transfers" the Debtor seeks to avoid**

    **2.  the Debtor's authority to exercise the trustee's avoidance powers and the effect of Pennsylvania's Curative Statute**

**IV. STANDARDS OF REVIEW UNDER  RULES 12(b)(1) and 12(b)(6)**

**V.   DISCUSSION: JURISDICTIONAL ISSUES**

    **A.  The <u>Rooker-Feldman</u> Doctrine Does Not Bar Consideration of the Debtor's Claims**

    **B.  The <u>Younger</u> Abstention Doctrine Is Inapplicable**

**VI. THE DEBTOR IS NOT A PARTY WHO CAN ASSERT THIS §544 AVOIDANCE CLAIM**

    **A.  The Debtor May Not Maintain This Action Jointly with the Trustee**

        **1.  The Trustee is not a voluntary joint plaintiff**

        **2.  The Trustee has not been effectively joined as an involuntary plaintiff under Fed. R. Bankr. P. 7019**

            **a.  the standards for involuntary joinder under Rule 19 have not been met**

            **b. the cases the Debtor relies upon to justify naming the Trustee as an involuntary plaintiff are inapposite**

    **B.  The Debtor Lacks Statutory Authority to Maintain the §544 Avoidance Action**

        **1.  the elements of the statutory scheme authorizing a debtor to invoke the trustee's avoidance powers: 11 U.S.C. §522(g)(1) and (h)**

        **2.  the §522(h) requirement that the trustee has not attempted to avoid the transfer**

        **3.  the Debtor's factual allegation regarding the alleged involuntariness of the mortgage transaction renders the Debtor's §544 claim legally deficient**

> **4. the Debtor may not invoke the Trustee's avoidance powers without
> satisfying the requirements of 11 U.S.C. §522(g)(1) and (h)**

## VII.  ASSUMING <u>ARGUENDO</u> THAT THE DEBTOR MAY ASSERT THE §547 CLAIM, HER CLAIM IS LEGALLY DEFICIENT

## VIII.  CONCLUSION

# I. INTRODUCTION

Plaintiff-Debtor Erma C. Funches ("the Debtor") commenced this adversary proceeding ("AP") by filing a two-count complaint purportedly brought on her behalf and on behalf of the William C. Miller, Standing Chapter 13 Trustee ("the Trustee").  In the AP, the Debtor seeks to use the Trustee's strong arm powers to avoid a first-priority mortgage that Defendant Household Finance Consumer Discount Company ("HFC") holds on her home (the "HFC Mortgage").  The Debtor's main contentions are that the HFC Mortgage is avoidable under 11 U.S.C. §544 because her "signature" on the mortgage is a forgery and because, at the time of its execution, HFC failed to obtain a contemporaneous acknowledgment[1] of the HFC Mortgage by a notary.

This is not the first time the Debtor has raised these alleged deficiencies concerning the HFC Mortgage.  Indeed, prior to the filing of the Debtor's bankruptcy petition, the Debtor had asserted these same issues as a defense to a state court foreclosure action which, following a bench trial, resulted in a "non-jury verdict" upholding the HFC Mortgage's validity.  The Debtor's subsequent bankruptcy filing has frozen that state court action in place, preventing the

---

[1]    An acknowledgment is "a formal declaration before an authorized public officer," by a person who executed an instrument, that the execution is his or her "free act or deed." <u>Abraham v. Mihalich</u>, 479 A.2d 601, 603 (Pa. Super. Ct. 1984).  Typically, an acknowledgment is accomplished by the notarization of the instrument by a notary public.  Acknowledgment also refers to the "certificate of the officer that the instrument has been so acknowledged." <u>Id.</u>

non-jury verdict from ripening into a formal judgment.  In the second count of the AP Complaint,

the Debtor requests that the state court's non-jury verdict be avoided as a preference under 11

U.S.C. §547.

Presently before the court is HFC's Motion to Dismiss ("the Motion"), which requires

consideration of the following questions:

1.    Do the Rooker-Feldman or Younger abstention doctrines mandate the
      dismissal of the AP as an improper collateral attack on state court
      proceedings?

2.    May the Debtor gain access to the arsenal of avoiding powers Congress
      reserved for the trustee by naming the trustee as an additional or
      involuntary plaintiff in an adversary action without prior notice to or
      consent of the trustee?

3.    If not, may the Debtor independently maintain an avoidance action in her
      capacity as a chapter 13 debtor?

4.    Does a bench decision upholding the validity of a mortgage effect a
      "transfer" of property so as to form the basis for a preference action
      brought under 11 U.S.C. §547?

I conclude that:

1.    The Rooker Feldman and Younger abstention doctrines do not mandate
      the dismissal of the AP.

2.    The Debtor may not maintain this avoidance action in the Trustee's name.

3.    The Debtor may not independently maintain an avoidance action in her
      capacity as a chapter 13 debtor because the Complaint does not set forth
      facts that, if proven at trial, would satisfy the requirements set forth in 11
      U.S.C. §522 (g)(1) and (h).

4.    The Debtor has not pled a plausible cause of action under 11 U.S.C. §547,
      mandating dismissal of Count I of her Complaint.

Accordingly, I will grant HFC's Motion and dismiss the Complaint.  The dismissal will

4

be without prejudice to the Debtor's right to file an amended complaint (if she can do so consistent with Fed. R. Bankr. P. 9011) with respect to her §544 claim, but without leave to amend with respect to her §547 claim.  The dismissal also is without prejudice to the rights of the Trustee.

## II.  BACKGROUND

### A.  The Main Bankruptcy Case - Overview

The Debtor filed a chapter 13 bankruptcy petition on July 9, 2007.  According to her bankruptcy schedules, she owns residential property located at 951 Route 113, Sellersville, Pennsylvania 18960 ("the Sellersville Property").[2]  In her schedules, the Debtor valued the Sellersville Property at $545,000.[3]  The Sellersville Property is subject to a first priority mortgage held by HFC.  HFC has filed a proof of claim in the Debtor's bankruptcy case asserting a secured claim of $574,387.55, with $147,990.61 in prepetition mortgage arrearages – by far, the largest claim filed against the Debtor's estate.

---

[2]       See Debtor's Schedule "A" (Bky. No. 07-13883ELF, Docket Entry No. 11) Hereinafter, I will refer to docket entries in the main bankruptcy case as "Bky. Docket Entry" and those in the AP as "AP Docket Entry".

I may take judicial notice of the dockets and the content of the documents filed in the bankruptcy case for the purpose of ascertaining the timing and status of events in the case and facts not reasonably in dispute.  See Fed. R. Evid. 201;  In re Scholl, 1998 WL 546607, at *1 n.1 (Bankr. E.D. Pa. Aug. 26, 1998); see also In re Indian Palm Assocs., Ltd., 61 F.3d 197, 205 (3d Cir. 1995).

[3]       See Debtor's Schedule "A" (Bky. Docket Entry No. 11)

### B.  The State Court Foreclosure Action

Prior to the filing of the Debtor's bankruptcy petition, the Debtor and HFC litigated

certain issues related to the validity of the HFC Mortgage in a foreclosure action filed in the

Bucks County Court of Common Pleas, docketed as No. 05-04428-24-1 ("the Foreclosure

Action").[4]   The Debtor filed an Answer in the Foreclosure Action in which she denied that she

had executed the note or mortgage and asserted that the signatures on those documents were

forgeries.  The Debtor also contended that the acknowledgment of her signature on the loan and

mortgage documents was invalid because she never appeared before a notary at the loan closing.

On June 25 and 26, 2007, the state court held a bench trial in the Foreclosure Action,

which resulted in the entry of a "non-jury verdict"[5] in HFC's favor.   The Non-Jury Verdict

awarded HFC damages in the amount of $570,733.10 "plus interest at the rate of $148.83 per day

---

[4]        In July 2005, the lender that originally financed the Debtor's November 2004
purchase of the Sellersville Property filed the Foreclosure Action.  While the Foreclosure Action
was pending, the Debtor's note and mortgage were sold to HFC and HFC substituted in as the
successor plaintiff.  See generally Foreclosure Action Docket.

        A bankruptcy court may take judicial notice of the matters of record in the state
courts within its jurisdiction.  E.g., In re Soto, 221 B.R. 343, 347 (Bankr. E.D. Pa. 1998).

[5]        The Pennsylvania Rules of Court use the term "decision" to refer to a ruling made
by a court after a bench trial.  See Pa. R. Civ. P. 1038 (providing for trial judge to make a
"decision" following a bench trial in a civil action); Pa. R. Civ. P. 1141(b) (procedure in
mortgage foreclosure action shall conform to rules relating to a civil action except as otherwise
provided in the rules governing mortgage foreclosure); 227.4(1) (authorizing entry of judgment
upon "the decision" of a judge following a trial without jury).  The Foreclosure Action docket
refers to the state trial court's decision as a "non-jury verdict."  See Foreclosure Action Docket
Entry dated July 2, 2006.   Because both the parties and the state court records refer to the state
court's "decision" as a "non-jury verdict," in the remainder of this Opinion I will use the term
"Non-Jury Verdict" when referring to the state court's decision.

for each day after June 25, 2007 until the entry of judgment and plus costs as provided by law."[6]

The state court judge also made certain factual findings on the record in support of the Non-Jury

Verdict,[7] including:

>    3.    [the Debtor] financed $433,200 as the principal amount.
>
>    4.    [the Debtor] obtained a mortgage loan from Delta Financial
>          Corporation in the original principal amount of $433,200,
>          which loan was intended to be secured.
>
>    11.   [a]t settlement [the Debtor] executed numerous
>          documents in connection with the loan, including
>          a note and mortgage.
>
>    12.   that deed was recorded in the Bucks County Recorder
>          of Deeds' office on November 19, 2004.

---

[6]    The Non-Jury Verdict that HFC appended to its Motion is dated June 27, 2007. The Foreclosure Action docket reflects the entry of that verdict on July 2, 2007.

[7]    Pursuant to Pa. R. Civ. P. 1038(b) and (c), the trial judge's decision may include "specific findings of fact and conclusions of law with appropriate discussion" and "may be made orally in open court at the end of the trial."

HFC appended a copy of the hearing transcript reflecting the state court's findings to its Motion without attaching an affidavit concerning the transcript's authenticity. Nonetheless, the Debtor has not disputed the authenticity and has referenced these very state court findings in both the AP Complaint and in her brief in opposition to HFC's Motion to Dismiss. Therefore, I may consider the state court's findings without converting HFC's Motion into a motion for summary judgment. See generally Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993) (court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document), cert. denied, 510 U.S. 1042, 114 S.Ct. 687 (1994).

HFC also appended other documents such as Ms. Funches' deposition in the Foreclosure Action, the HUD-1 Settlement Statement and 2007 documents from the Bucks County Recorder's Office to its Motion. While the Debtor did not object to HFC's use of these documents, I nonetheless did not consider them and they played no role in my determination of HFC's Motion.

15.     since the transaction of November 10, 2004 [the
        Debtor has] made no payment despite receiving
        monthly payment vouchers for the loan.

17.     Mr. Nolan [the title agent who handled the transaction]
        testified that he personally witnessed the
        execution of all appropriate documents, including
        the mortgage documents, during the transaction of
        November 10, 2004.

19.     it is undisputed that the [Debtor] admits that
        she applied for and received the loan.

20.     it is undisputed that the [Debtor] attended the loan.

21.     it's undisputed that the [Debtor] received title to the property.

22.     it's undisputed that the [Debtor] could not have
        afforded the property without the proceeds of the loan.

24.     [the testimony of HFC's expert] is credible.

25.     [HFC's expert] testified that the signatures on the [loan
        and mortgage documents] were all original signatures
        of the [Debtor], Erma Funches.

26.     [the Court] accepts that testimony as credible and
        thereby finds that the signatures were originals.

28.     [the Debtor] produced no evidence concerning
        forgery of the document[s] other than the
        testimony of [the Debtor] . . ., which the Court does
        not find credible.

30.     the Court finds that while in the process of
        asking various questions and pointing out perceived
        irregularities [regarding the loan], at no time [was, sic]
        the issue of forgery ever raised.

31.     the [Debtor] admits entering into a consumer
        credit transaction, and in that transaction the lender
        took a security interest in a newly purchased principal
        residence.

8

>32.    the Court finds in favor of [HFC] and against [the Debtor],
>and will sign the appropriate order of mortgage foreclosure.

Foreclosure Action, June 26, 2007 Hearing Transcript, at 2-7 ("Foreclosure Findings").

The Non-Jury Verdict has not yet become a "judgment."  Unlike the federal judicial system, where a judgment typically is entered immediately following the issuance of a decision resolving a case, see Fed. R. Civ. P. 58, in the Pennsylvania state court system, a judgment ordinarily is not entered until after post-trial motions have been decided or, where no post-trial motions have been filed, until after the 10-day time period for filing such motions has elapsed. See Pa. R. Civ. P. 227.4(1), 227.1.  Here, the Debtor filed for chapter 13 bankruptcy relief before the time for filing post-trial motions had passed, which had the effect of preventing any valid judgment from being entered.  See 11 U.S.C. §362(a).[8]

### C.  The AP Complaint and HFC's Motion to Dismiss

On July 27, 2007, shortly after commencing the main bankruptcy case, the Debtor instituted this AP by filing a Complaint against HFC ("the AP Complaint").  Through the AP, the Debtor seeks to avoid the HFC Mortgage.[9]

---

[8]    According to the dockets for the Foreclosure Action, judgment was entered on state court judge's decision on July 13, 2007, however, this was done in violation of the automatic stay.  Generally, actions taken in violation of the automatic stay are void.  E.g., In re Myers,  491 F.3d 120, 127 (3d Cir. 2007).

[9]    If the Debtor were successful in avoiding the HFC Mortgage, the consequences would not be entirely to the Debtor's benefit.  Avoidance of the mortgage would create equity in the Sellersville Property in excess of $500,000.  It would also leave HFC with a general unsecured claim in excess of $500,000.  The Debtor is entitled to exempt only $19,425.00 of the equity that would be created by avoidance of the HFC Mortgage.  See 11 U.S.C. §522(d)(1), (5). To confirm a chapter 13 plan, the Debtor is obliged to provide a distribution to unsecured

The AP Complaint states two (2) counts:

1.  Count I, which alleges that the Non-Jury Verdict is an avoidable preference pursuant to 11 U.S.C. §547[10]; and

---

creditors in the same amount that creditors would receive in a chapter 7 liquidation.  See 11 U.S.C. §1325(a)(4).  In this case, after avoidance of the HFC Mortgage, liquidation of the Sellersville Property in a hypothetical chapter 7 case would generate a distribution of at least several hundred thousand dollars.  Accordingly, the chapter 13 plan would have to provide for an equivalent distribution – requiring the Debtor to fund a plan totaling several hundred thousand dollars.  The Debtor appears to lack the income level sufficient to make such payments over the sixty (60) month period permitted in chapter 13.  Compare id. §1322(d)(1) with §1325(b)(4); see also Debtor's Schedules I & J (listing monthly take-home income of $8,833.00 and monthly expenses of $8,770.00) (Bky. No. 07-13883 Docket Entry Nos. 16, 17).

The end result is that the only way the Debtor can propose a confirmable chapter 13 plan is to sell the Sellersville Residence as part of the plan.  Her counsel acknowledged as much at the hearing.  See Hearing Transcript, Sept. 27, 2007 (hereinafter "N.T."), at 42-43.  Apparently, the Debtor's goal in this case is to extract the value of her bankruptcy exemption (slightly under $20,000.00) from the property, rather than losing that value in a foreclosure sale.

[10]    Section 547(b) provides that:

(b) Except as provided in subsections (c) and (i) of this section, the trustee may avoid any transfer of an interest of the debtor in property ---
    (1) to or for the benefit of a creditor;
    (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
    (3) made while the debtor was insolvent;
    (4) made --
        (A) on or within 90 days before the date of the filing of the petition; or
        (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
    (5) that enables such creditor to receive more than such creditor would receive if --
        (A) the case were a case under chapter 7 of this title;
        (B) the transfer had not been made; and
        (C) such creditor received payment of such

2.  Count II, which alleges that the HFC Mortgage is avoidable pursuant to 11 U.S.C. §544(a)[11] due to its defective notarization.

In the Complaint, the Debtor alleges that she purchased the Sellersville Property on November 10, 2004 and that the only documents she signed in the course of the settlement were a defective Settlement Statement and a contract regarding propane gas service. AP Complaint, ¶¶5,7. The Debtor contends that she did not execute a mortgage or note and continues to assert, as she did in the Foreclosure Action, that the HFC Mortgage and note "which purport to contain her signature are forgeries." AP Complaint, ¶7. The Debtor also continues to contend that the

---

debt to the extent provided by the provisions of this title.

[11]   Section 544(a) provides that:

(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by ---

(1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, as such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such creditor exists;

(2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such creditor exists; or

(3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

notary did not attend the settlement, which she asserts renders the HFC Mortgage invalid under state law and avoidable by the Trustee.  AP Complaint, ¶¶ 8, 9.

The Debtor brought the AP Complaint in the Debtor's name and in the name of the Trustee.  Indeed, paragraph 1 of the AP Complaint refers to the AP as "an action by the Debtor and the Trustee."  See AP Complaint ¶1 (emphasis added).  Nonetheless, with respect to the Trustee, the Debtor alleges that "[i]t is not known whether the Trustee will consent to this action on his behalf and hence will attempt to avoid this transfer."  AP Complaint ¶17 (emphasis added).   The Debtor contends that if the Trustee does not desire to pursue the avoidance claims, the Debtor is entitled to do so independently pursuant to 11 U.S.C. §§522(h) and (g)(1).  See AP Complaint, ¶ 18.  In support of this contention, the Debtor states that she claims exemption rights in the Sellersville Property, that the entry of the Non-Jury Verdict against her was not voluntary, that she did not conceal the Sellersville Property and that the avoidance rights she asserts in the AP would have been available to the Trustee.  Id.

Notably, the documents filed in this case are devoid of formal proof of service of the AP Complaint on the Trustee in conformity with the rules of court.[12]

HFC responded to the AP Complaint by filing the Motion (presumably brought pursuant to Fed. R. Civ. P. 12(b)(6) and/or 12(b)(1), as incorporated by Fed. R. Bankr. P. 7012(b)), and a

---

[12]        The Debtor filed a proof of service of the AP Complaint and Summons as to HFC, see AP Docket Entry No. 3, but did not do so with respect to the Trustee.  The Trustee had notice of the filing of the AP Complaint because he received electronic notice of its filing.  See Bky. No. 07-13883 (Docket Entry No. 10).  However, that notice did not constitute service of the AP Complaint in the sense of "service of process."  Compare Fed. R. Bankr. P. 7004 (governing service of summons and complaint in adversary proceeding with id. 7005 (governing service of papers after service of the complaint in an adversary proceeding).

12

Motion for Sanctions pursuant to Rule 9011.[13]

A hearing was held on both motions on September 27, 2007, after which the parties

submitted additional memoranda of law in support of their respective positions.

## III.  THE PARTIES' ARGUMENTS

### A.  Initial Briefing

In its Memorandum of Law in support of its Motion, HFC argued that:

  1.  the <u>Rooker-Feldman</u> doctrine bars consideration of the Debtor's claims;

  2.  the Complaint should be dismissed under the <u>Younger</u> abstention doctrine;

  3.  the Non-Jury Verdict did not effect a "transfer" of an interest of the Debtor in property;

  4.  issue and claim preclusion principles bar the Debtor from re-litigating the defective notarization's effect on the validity of the HFC Mortgage; and

  5.  issue and claim preclusion principles bar the Debtor from re-litigating whether her signature on the HFC Mortgage was a forgery.

In her Memorandum in Opposition to HFC's Motion, the Debtor argued that:

  1.  the <u>Rooker-Feldman</u> and <u>Younger</u> abstention doctrines are  inapplicable to  avoidance and/or preference claims;

  2.  occurrences in the course of a mortgage foreclosure can effect an avoidable "transfer" of a debtor's property;

  3.  the Non-Jury Verdict was not sufficiently final to be accorded any preclusive effect; and

  4.  in any event, the avoidance action is not affected by principles of res

---

[13]  This Opinion will address only the Motion.  I will resolve the Motion for Sanctions in a separate order and/or memorandum.

judicata and collateral estoppel.

**B.  The Hearing and Post-Hearing Briefing**

   **1.  identity of the "transfers" the Debtor seeks to avoid**

At the hearing on HFC's Motion, the Debtor refined certain of her legal theories with

respect to the "transfers" she seeking to avoid in each of the Counts of the AP Complaint.

Specifically, with respect to the §544 avoidance claim in Count II, the Debtor no longer

pressed the theory that the Non-Jury Verdict had effected a transfer of the Debtor's property.

Instead, the Debtor asserted that she is entitled to avoid the transfer giving rise to the HFC

Mortgage itself,[14] pursuant to In re Fisher, 320 B.R. 52 (E.D. Pa. 2005) and In re Rice, 133 B.R.

722 (Bankr. E.D. Pa. 1991), two federal court decision that apply Pennsylvania state law to

determine the avoidability under 11 U.S.C. §544 of an improperly notarized mortgage.  See N.T.

at 26, 40.[15]

---

   [14]   During oral argument, the following colloquy took place between the court and
the Debtor's counsel regarding the §544 claim:

>      THE COURT: I want to understand what transaction, what transfer
>      precisely you're seeking to avoid.  The actual signing of the mortgage?
>      Is your theory that the debtor did not acknowledge the mortgage . . .
>      in front of a notary, therefore it's a mortgage that can be avoided
>      under the trustee's strong-arm powers?
>
>      MR. SCHOLL: Yes.

N.T. at 26; see also N.T. at 40.

   [15]   In Rice and Fisher, federal courts applied Pennsylvania state law to determine the
validity of an improperly notarized mortgage as to third party creditors and, therefore, the
mortgage's avoidability under 11 U.S.C. §544.  In both cases the avoidance actions were
instituted jointly by the respective debtors and trustees.  In Rice, the bankruptcy court held that a
mortgage that was improperly notarized – i.e., that was notarized only after the settlement and

With respect to the Debtor's §547 preference claim (and in contrast to the §544 claim), at the hearing on the Motion, the Debtor continued to maintain that the <u>entry of the Non-Jury Verdict</u> effected a "transfer" of property resulting in an avoidable preference.  <u>See</u> N.T. at 41.

In response to this theory, HFC argued that the entry of the Non-Jury Verdict did not transfer any property.  HFC reasoned that, in light of the Foreclosure Findings, it had already been determined that HFC obtained a valid mortgage in the November 10, 2004 transaction and, therefore, the entry of the Non-Jury Verdict did not transfer any further property.  In other words, HFC posited that it was the Debtor's grant of the HFC Mortgage that gave HFC the interest in the Sellersville Property and that the Non-Jury Verdict effected no further transfer because the HFC Mortgage was valid from the outset.

---

out of the presence of the mortgagor -- was invalid against certain third parties under Pennsylvania law and therefore, could be avoided through use of the trustee's strong arm powers. The district court reached a similar conclusion in <u>In re Fisher</u>.

There is contrary authority.  <u>See</u> <u>In re Bell</u>, 309 B.R. 139, 158-61 (Bankr. E.D. Pa. 2004) (Pennsylvania law requires clear and convincing evidence of fraud or forgery with respect to the underlying mortgage documents to void the perfection of a recorded mortgage containing an acknowledgment that is complete and proper on its face and absent proof of fraud or forgery, a mortgage cannot be avoided under 11 U.S.C. §544); <u>In re Armstrong</u>, 288 B.R. 404, 429-31 (Bankr. E.D. Pa. 2003) (same); <u>In re Messinger</u>, 281 B.R. 568 (Bankr. M.D. Pa. 2002) (same); <u>see</u> <u>also</u> <u>In re Jones</u>, 284 B.R. 92 (Bankr. E.D. Pa. 2002) (same, but also finding that debtor's recollection whether notary was present was muddled and not sufficient to establish that notary did not attend loan closing), <u>aff'd</u>, 308 B.R. 223 (E.D. Pa, 2003) (debtor's muddled recollection regarding notary's presence at loan settlement was not sufficient to establish that notary was not present).

**2. the Debtor's authority to exercise the trustee's avoidance powers
and the effect of Pennsylvania's Curative Statute**

Two additional issues were explored at the hearing on HFC's motions and/or in post-hearing briefing: (1) the Debtor's statutory authority for exercising the Trustee's avoidance powers under 11 U.S.C. §§544, 547[16] and (2) whether the Pennsylvania Curative Statute, 21 P.S. §281.1, effectively quieted title and preserved the validity of HFC Mortgage as to third party avoidance claims under Pennsylvania law and 11 U.S.C. §544, notwithstanding the alleged defects in the notarization of the mortgage.

# IV.  STANDARDS OF REVIEW UNDER RULES 12(b)(1) and 12(b)(6)

As indicated earlier, HFC's Motion presumably was made pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).  Rule 12(b)(1) and Rule 12(b)(6) provide for the dismissal of causes of action for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted, respectively.

In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief may be granted, the court must accept all of the plaintiff's factual allegations as true. Hishon v. King & Spaulding, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232 (1984).  Dismissal is appropriate only if, accepting as true all facts alleged in the complaint, the plaintiff has not pled "enough facts to state a claim to relief that is plausible on its face."  Bell Atlantic Corp. v.

---

[16]    Initially, the court raised this issue because it arose naturally from the Debtor's counsel's concession that he did not obtain the Trustee's consent prior to filing the AP Complaint,  see N.T. at 29, 42, and the Trustee's lack of participation in the AP.  In its post-hearing Memorandum, HFC argued that only the Trustee has the authority to assert the §544 claim raised in the AP Complaint.  HFC's Responsive Brief at 10-11 (AP Docket Entry No. 18).

Twombly, 127 S.Ct. 1955, 1974 (2007).  In other words,

> the complaint must [first] describe the claim in sufficient detail to give
> the defendant "fair notice of what the . . . claim is and the grounds
> upon which it rests."  Bell Atlantic Corp. v. Twombly, 127 S.Ct.
> 155, 1964 (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).
> Second, its allegations must plausibly suggest that the plaintiff has
> a right to relief, raising that possibility above a "speculative level";
> if they do not, the plaintiff pleads itself out of court.  Bell Atlantic,
> 127 S.Ct. at 165, 1973 n.14.

E.E.O.C. v. Concentra Health Servs, Inc., 496 F.3d 773, 776 (7th Cir. 2007); accord, Broadcom

Corp. v. Qualcomm Inc., 501 F.3d 297, 317 (3d Cir. 2007).

The court's role in scrutinizing a plaintiff's complaint for Rule 12(b)(6) dismissal

purposes is limited.  The focus of the court's inquiry is not on whether the plaintiff will

ultimately prevail, but "'whether the plaintiff is entitled to offer evidence in support of [her]

claims.'"  Unite Nat'l Ret. Fund v. Rosal Sportswear, Inc., 2007 WL 2713051, at *4 (M.D. Pa.

Sept. 14, 2007).

In assessing a Rule 12(b)(6) motion to dismiss, a court may "consider the allegations in

the complaint, exhibits attached to the complaint and matters of public record."  Unite Nat'l Ret.

Fund, 2007 WL 2713051, at *4 (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.,

998 F.2d 1192, 1196 (3d Cir. 1993), cert. denied, 510 U.S. 1042, 114 S.Ct. 687, 126 L.Ed.2d 655

(1994)).  The court may also consider "'undisputedly authentic' documents" where the plaintiff's

claims are based on documents and the defendant has attached copies of the documents to the

motion to dismiss.  Unite Nat'l Ret. Fund, 2007 WL 2713051, at *4.

A motion to dismiss pursuant to Rule 12(b)(1), on the other hand, challenges the

existence of subject matter jurisdiction over a claim.  Hedges v. United States, 404 F.3d 744, 750

17

(3d Cir. 2005).  When a motion to dismiss challenges subject matter jurisdiction, the court must

distinguish between "12(b)(1) motions that attack the complaint on its face and 12(b)(1) motions

that attack the existence of subject matter jurisdiction in fact, quite apart from any pleadings."

Mortensen v. First Fed. Sav. & Loan Assoc., 549 F.2d 884, 891 (3d Cir. 19770.  In ruling on

12(b)(1) motions to dismiss that attack the complaint on its face, as HFC's Motion does here,[17]

"the court must consider the allegations of the complaint as true."  Id.; see also Gould Elecs., Inc.

v. United States, 220 F.3d 169, 176 (3d Cir. 2000).[18]

---

[17]    See, e.g., In re Cooley, 365 B.R. 464, 467 (Bankr. E.D. Pa. 2007) (treating Rooker
Feldman challenge to subject matter jurisdiction as a "facial attack" to jurisdiction).

[18]    With respect to what the Third Circuit has labeled the "factual attack" to subject
matter jurisdiction, the Court of Appeals has observed that:

> The factual attack . . . differs greatly for here the trial court may
> proceed as it never could under 12(b)(6) or Fed. R. Civ. P. 56.
> Because at issue in a factual 12(b)(1) motion is the trial court's
> . . . very power to hear the case there is substantial
> authority that the trial court is free to weigh the evidence and
> satisfy itself as to the existence of its power to hear the case.  In
> short, no presumptive truthfulness attaches to the plaintiff's
> allegations, and the existence of disputed material facts will not
> preclude the trial court from evaluating for itself the merits of
> jurisdictional claims.  Moreover, the plaintiff will have the
> burden of proof that jurisdiction does in fact exist.

Mortensen, 549 F.2d at 891.

# V.  DISCUSSION: JURISDICTIONAL ISSUES

Two of the arguments HFC raised in its Motion  –  namely, that the <u>Rooker-Feldman</u> and

<u>Younger</u> abstention doctrines mandate the dismissal of the AP –  implicate the propriety or

advisability of this court exercising jurisdiction in this AP.  Therefore, I will begin by addressing

those arguments.

### A.  The <u>Rooker-Feldman</u> Doctrine Does Not Bar Consideration of the Debtor's Claims

The <u>Rooker-Feldman</u> doctrine stems from the statutory proposition that federal district

courts are courts of original, and not appellate, jurisdiction.  <u>Exxon Mobil Corp. v. Saudi Basic</u>

<u>Indus. Corp.</u>, 544 U.S. 280, 284-85, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005).  Only the United

States Supreme Court has original jurisdiction to review final judgments from a state's highest

court.  28 U.S.C. §1257(a).  The <u>Rooker-Feldman</u> doctrine is designed to prevent federal district

courts from sitting as appellate courts with regard to state court judgments.  As the Supreme

Court explained in <u>Exxon Mobil</u>, the <u>Rooker-Feldman</u> doctrine "is confined to cases of the kind

from which the doctrine acquired its name: cases brought by state-court losers complaining of

injuries caused by state-court judgments rendered before the district court proceedings

commenced and inviting district court review and rejection of those judgments."  <u>Exxon Mobil</u>

<u>Corp.</u>, 544 U.S. at 284.

HFC asserts that the <u>Rooker-Feldman</u> doctrine deprives the court of subject matter

jurisdiction over the claims the Debtor has asserted in this AP.  I do not agree.

Application "of the <u>Rooker-Feldman</u> doctrine in bankruptcy is limited by the separate

jurisdictional statutes that govern federal bankruptcy law." In re Sasson, 424 F.3d 864, 871 (9th

Cir. 2005).  As such,

> [t]he Rooker-Feldman doctrine has little or no application to
> bankruptcy proceedings that invoke the substantive rights under
> the Bankruptcy Code or that, by their nature, could arise only in
> the context of a federal bankruptcy case.

Id.  Further, as the court stated in In re Ehmke, 2006 WL 1994904 at *5 (E.D.N.Y. July 14,

2006):

> Rooker-Feldman has never had much impact in bankruptcy cases.  Congress'
> power under Article I of the Constitution to enact uniform bankruptcy laws such
> as the Bankruptcy Code necessarily means that state court judgments will be
> treated differently, with less or even no effect, then they would be treated in state
> court.  This is not regarded as "second-guessing" the merits decided by the state
> court, which is all that Rooker-Feldman seeks to prevent.  It is merely a necessary
> incident of enforcing the provisions on the Bankruptcy Code.

In In re Knapper, 407 F.3d 573, 583 n.22 (3d Cir. 2005), our Court of Appeals has been

even more blunt on the subject :

> In apparent contradiction to Rooker-Feldman theory, **bankruptcy
> courts are empowered to avoid state judgments**, see, e.g., 11 U.S.C.
> §§ 544, 547,548, 549; to modify them, see, e.g., 11. U.S.C. §§ 1129,
> 1325; and to discharge them, see, e.g., 11 U.S.C. §§ 727, 1141,
> 1328 . . . . Thus, final judgments in state courts are not necessarily
> preclusive in United States bankruptcy courts.  Indeed, the rule has
> long stood that a state court judgment entered in a case that falls
> within the federal court's exclusive jurisdiction is subject to
> collateral attack in the federal courts.[19]

---

[19]    Notably, the Third Circuit quoted from In re Gruntz, 202 F.3d 1074 (9th Cir.
2000) (en banc) in the passage above and directed attention to Gruntz for a fuller discussion of
the intersection between Rooker-Feldman and bankruptcy law.  In Gruntz, the court further
explained:
> It is generally true that a judgment by a court of competent jurisdiction
> bears a presumption of regularity and is not thereafter subject to
> collateral attack.  But Congress, because its power over the subject of
> bankruptcy is plenary, may by specific bankruptcy legislation create

Id, (citations omitted) (emphasis added); see also Sasson, 424 F.3d at 871 ("[i]n the exercise of federal bankruptcy power, bankruptcy courts may avoid state court judgments in core bankruptcy proceedings, . . . may modify judgments  . . .  and may discharge them").

        The Rooker-Feldman doctrine has no application to this AP because the Debtor is not seeking to have this court review the merits of the state court Non-Jury Verdict.[20]  Rather, she is attempting to prevent the bankruptcy court from giving effect to that Verdict or, in bankruptcy terminology, attempting to have the Non-Jury Verdict "avoided."  As the court noted in In re Hopkins, 346 B.R. 294, 302 (Bankr. E.D.N.Y. 2006), "[t]he bankruptcy avoidance provisions represent specific bankruptcy legislation permitting federal courts to set aside state-court judgments in appropriate circumstances."  See also In re Huie, 2007 WL 2317152 (Bankr. E.D. Tex. Aug. 8, 2007) (finding Rooker-Feldman doctrine did not bar §522(f) claim to avoid state court judgment).

---

        an exception to that principle and render judicial acts taken with
        respect to the person or property of a debtor whom the bankruptcy law
        protects nullities and vulnerable collaterally.

Id. at 1079-80 (quoting Kalb v. Feuerstein, 308 U.S. 433, 438-39, 60 S.Ct. 343, 84 L.Ed. 370 (1940)).

        [20]      As observed in Part II.B., supra, the Non-Jury Verdict is something "short" of a state court judgment.  For purposes of this discussion, I will assume, without deciding, that the Non-Jury Verdict is sufficiently similar to a judgment so as to implicate the Rooker-Feldman doctrine.

### B.  The <u>Younger</u> Abstention Doctrine Is Inapplicable

Next, HFC argues that abstention is warranted under <u>Younger v. Harris</u>, 401 U.S. 37, 91 S.Ct. 746 (1971).

In <u>Younger</u>, the Supreme Court articulated "the fundamental policy against federal interference with state criminal prosecutions."  401 U.S. at 46, 91 S.Ct. at 751.  There, the Court reversed an order of a three-judge district court enjoining a state prosecutor from proceeding further in an ongoing criminal prosecution.  In subsequent decisions, the Supreme Court has extended <u>Younger</u> doctrine against federal interference with ongoing state court proceedings to certain types of state civil proceedings.  <u>See</u> 17B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, <u>Federal Practice & Procedure: Civil 3d</u> §4254 (West 2007) ("Wright & Miller").

In  <u>Addiction Specialists, Inc. v. Township of Hampton</u>, 411 F.3d 399, 408 (3d Cir. 2005), the Court of Appeals stated that <u>Younger</u> abstention is only appropriate where the following three requirements are satisfied:

1.   there are ongoing state proceedings that are judicial in nature;

2.   the state proceedings implicate important state interests; and

3.   the state proceedings afford an adequate opportunity to raise the federal claims.

All three factors must be met for a federal court to properly rely upon <u>Younger</u> in abstaining from exercising jurisdiction.  <u>Id.</u>  In <u>Addiction Specialists</u>, the court also cautioned that abstention "rarely should be invoked" and is appropriate only in a few carefully circumscribed situations. <u>Id.</u> (citations omitted).

At minimum, factor 3 of the <u>Younger</u> abstention test is absent here.  The ongoing state

court proceeding (the mortgage foreclosure action) does not provide a forum for the §544 claims

at issue in the AP to be determined.

The §544 avoidance claim in this AP is based on the contentions that the

acknowledgment of the HFC Mortgage was defective and that the Debtor's signature on the

mortgage and note were forgeries.  The primary beneficiary of the claim, if it is successful, will

be the bankruptcy estate (i.e., the Debtor's creditors) because the avoidance of the HFC Mortgage

will augment the assets in the bankruptcy estate and increase the distribution to creditors.  The

assertion of this type of claim for the benefit of the Debtor's creditors cannot be raised in the

ongoing state court proceeding.  That proceeding is a two-party mortgage foreclosure action

between the Debtor and HFC.  There is no procedural vehicle in that action for the avoidance

rights of third parties to be vindicated.  For this reason alone, Younger abstention is inapplicable.

See In re PRS Ins. Group, Inc., 331 B.R. 580, 589 (Bankr. D. Del. 2005) (Younger abstention did

not apply to cause bankruptcy court to decline to exercise jurisdiction over trustee's defenses to

debtor's proof of claim; no proceeding existed elsewhere to deal with trustee's defenses); see

also Addiction Specialists, 411 F.3d at 413:[21]

---

[21]    I note also that, with respect to factor 2, at least one court has held that state
foreclosure actions are "purely private" and do not implicate important state interests such as to
warrant abstention under the Younger abstention doctrine.  See Rowland v. Novus Financial
Corp., 949 F. Supp. 1447, 1456 (D. Hawaii 1996).

Finally, with respect to factor 1's requirement of ongoing state proceedings, I note
that the Foreclosure Action has been stayed by the filing of the Debtor's bankruptcy petition and
all that remains is the filing of post-trial motions and/or appeals.  The litigation of the avoidance
action in this court would not offend notions of comity with respect to the Foreclosure Action.
Here, that means that a successful avoidance action would set aside, under federal law, a
mortgage the state court found valid.  That result does not interfere with the prerogatives of the
state court system but merely superimposes federal law on the result of the state court
proceeding.

> Younger abstention is only appropriate where the precise claims
> raised in federal court are available in the ongoing state proceedings.
> Where the availability of a claim in state court is questionable,
> our abstention jurisprudence weights in favor of retaining
> jurisdiction.

Accordingly, I find HFC's argument that the Younger abstention doctrine mandates the

dismissal of this AP unpersuasive.


## VI. THE DEBTOR IS NOT A PARTY WHO CAN ASSERT THIS §544 AVOIDANCE CLAIM

HFC also raised another threshold issue -- whether the Debtor has the authority to

maintain this AP.[22]   In response, the Debtor asserts that she possesses the ability to maintain this

action: (1) together with the involuntarily-named Trustee and/or (2) independently pursuant to

sections 522(g)(1) and (h) of the Bankruptcy Code.

Because the §544 claim and the §547 claim seek to avoid different transfers, it is

necessary to evaluate each claim separately in considering this argument.  I start with the §544

claim.

As explained below, I conclude that the Debtor may not maintain the §544 claim either by

including the Trustee as a party plaintiff or in her capacity as a chapter 13 debtor.

---

[22]      Some courts have reasoned that the issue of whether a debtor has the authority to
maintain an avoidance action is one of standing that implicates the court's subject matter
jurisdiction over an adversary proceeding.  E.g., In re Cohen, 305 B.R. 886, 901 (B.A.P. 9th Cir.
2004) ("We must resolve the jurisdictional question of chapter 13 debtor standing to exercise
trustee avoiding powers").  I find it unnecessary decide whether or not the issue is one of
"standing," "real party in interest," "failure to state a cause of action," or some related doctrine.

## A.  The Debtor May Not Maintain This Action Jointly with the Trustee

### 1.  The Trustee is not a voluntary joint plaintiff.

In this AP, the Trustee has neither initiated the action in his own right nor authorized the

Debtor to bring it on his behalf.  True, the caption of the AP Complaint is styled as an action

brought by the Debtor and the Trustee.  However, the Trustee has not participated in this AP

individually.  Nor has he made a separate appearance through counsel.  Further, the Debtor's

counsel acknowledged that he did not ask the Trustee for his permission prior to naming him in

the caption of the Complaint.  <u>See</u> N.T., at 29, 42.  The AP Complaint itself alleges an

uncertainty that the Trustee will consent to this action.  <u>See</u> AP Complaint, ¶17.

Accordingly, I conclude that the Trustee is not a voluntary party in the AP.  It follows

that, at best, his role in this case is necessarily that of an involuntarily-named party.

### 2.  The Trustee has not been effectively joined as an involuntary plaintiff under Fed. R. Bankr. P. 7019

#### a.  the standards for involuntary joinder under Rule 19 have not been met

Because the Trustee has not voluntarily joined this action as a party, the next question is

whether the Debtor may maintain this action pursuant to the theory that the Trustee has been

properly joined as an additional, albeit involuntary, plaintiff.  To resolve this question, I must

examine Fed. R. Civ. P. 19, made applicable to this AP through Fed. R. Bankr. P. 7019, because

it governs compulsory joinder and makes some provision for joining a party an involuntary

plaintiff.

Rule 19 provides in pertinent part:

> **(a) Persons Required to be Joined if Feasible.**
>     **(1) Required Party**.  A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
>         (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>         (B) that person claims an interest relating to the subject matter of the action and is so situated that disposing of the action in the person's absence may:
>             (I) as a practical matter impair or impede the person's ability to protect the interest; or
>             (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.
>
>     **(2) Joinder by Court Order**.  If a person has not been joined as required, the court must order that person be made a party.  A person who refuses to join as a plaintiff may be made either a defendant, or in a proper case, an involuntary plaintiff.[23]

Putting aside the Rule 19 requirement that the Trustee's absence from this litigation preclude complete relief from being awarded to the other parties, other significant obstacles block the Debtor's path to using Rule 19 as a vehicle for joining the Trustee in the AP.

Rule 19(a)(2) states that if a person "refuses to join as a plaintiff" that person may be made . . . in a proper case, an involuntary plaintiff."  An "involuntary plaintiff" is "a party who is obligated to assist in prosecuting an action or to permit its name to be used but refuses to do so

---

[23]     The text quoted above is the current version of the rule, as amended effective December 1, 2007. The language of Rule 19 was amended "as part of the general restyling of the Civil Rules to make them more easily understood and to make style and terminology consistent throughout the rules."  See Advisory Committee Note, 2007 Amendment to Fed. R. Civ. P. 19. If the changes in Rule 19 had been substantive, I would have had to determine which version of the rule should be applied to a motion pending on the effective date of the change.  Because the amendment was intended to be stylistic only, it is unnecessary to do so and, in this Opinion, I will refer the new version of rule.

and who is thereafter joined, without service, and bound by any judgment the Court may enter as

to it." International Rediscount Corp. v. Hartford Acc. & Indemn. Co., 425 F. Supp. 669, 674

(D. Del. 1977); see also Independent Wireless Co. v. Radio Corp. of Am., 269 U.S. 459, 46 S.Ct.

166 (1927) (cited in Advisory Committee Note, Fed. R. Civ. P. 19).

Rule 19 limits the use of the involuntary plaintiff procedure to a "proper case."  Under the

case law, a "proper case" requires:

> 1.   an absentee party that "has an obligation to permit its name and title to be
>      used to protect the rights asserted in the action";
>
> 2.   that the absentee party is beyond the jurisdiction of the court; and
>
> 3.   that the absentee party has been asked to join the suit but has refused to do
>      so voluntarily.

International Rediscount Corp., 425 F. Supp. at 674; see also South Dakota ex rel. South Dakota

R.R. Auth. v. Burlington N. & Santa Fe Ry. Co., 280 F. Supp.2d 919, 935 (D.S.D. 2003); Dublin

Water Co. v. Delaware River Basin Comm'n, 443 F. Supp. 310, 315 (E.D. Pa. 1977); In re

Interstate Motor Freight Sys. IMFS, Inc., 71 B.R. 741, 746 (Bankr. W.D. Mich. 1987); 7 Wright

& Miller §1606.

This AP is not a "proper case" within the meaning of Rule 19.

First, the text of the rule, as well as the case law describing the elements of a "proper

case," both require that the party to be joined refuse to do so.  The Trustee has not refused to join

this adversary.  He was never even asked to join the litigation as a party plaintiff.

Second, the Trustee is not beyond the Court's jurisdiction.[24]

---

[24]      This requirement is grounded in Rule 19's text.  See also 7 Wright & Miller §1606
(footnotes omitted):

Third, the Trustee has no duty to permit the Debtor to prosecute this avoidance action in

his name.  As the court observed in Novak v. Active Window Productions, Inc., 2007 WL

749810 (E.D.N.Y. Mar. 7, 2007), the duty to participate in a suit or to permit another to bring the

suit in one's name has generally been found to arise in two types of cases: "(1) where an owner

grants an exclusive license to a licensee and permits the licensee to sue in his name, or (2) where

an obligation arises by contract among co-owners."  Id. at *3.

There is nothing in the relationship between a bankruptcy debtor and a case trustee that

even remotely resembles a contractual relationship justifying the initiation of a lawsuit by one

---

A party may be made an involuntary plaintiff only if the person is beyond the
jurisdiction of the court, and is notified of the action, but refuses to join. . . . [I]f
the absentee is within the jurisdiction, the absentee must be served with process
and made a defendant. These limitations are necessary because the
involuntary-plaintiff procedure allows a person to be made a party to the action
without service of process and permits the court to enter a judgment that has
preclusive effect as to the involuntary plaintiff. There is no justification for
resorting to it when the party actually is subject to the jurisdiction of the court.

I also note that nothing in the record shows that the Debtor actually effected
service of process on the Trustee in compliance with Fed. R. Civ. P. 4 (applicable in this AP
through its incorporation in Fed. R. Bankr. P. 7004).  See n.12, supra. Valid service of process is
a prerequisite to a court's exercise of personal jurisdiction over a party.  See generally 7 Wright
& Miller §1610 (relating to personal jurisdiction issues regarding compulsory joinder) & §1606
("if the absentee [plaintiff] is within the jurisdiction, the absentee must be served with process . .
. "); see also International Rediscount Corp., 425 F. Supp. at 674 ("If a party is subject to service,
however, it is not joined as an "involuntary plaintiff."  Rather, it is served, joined as a defendant,
and then realigned by the Court in the 'character which (it) should assume'.").

The absence of personal jurisdiction due to lack of service by itself might require
dismissal of the AP Complaint if the participation of the Trustee as a party plaintiff is essential.
However, it is likely that the Debtor would be able to cure this particular jurisdictional defect by
effecting service.  Therefore, I consider in the text other reasons, less amenable to cure, why the
Debtor may not invoke Rule 19.

party in the name of the other party.[25]   Because the Trustee has no duty to permit the Debtor to

exercise his avoidance powers in his name, the Debtor may not maintain this action in the name

of the Trustee by invoking Rule 19.   See generally In re Frymire, 1988 WL 100987, at *1 (Bankr.

E.D. Pa. Sept. 27, 1988) (declining to permit the debtor to obtain an extended statute of

limitations – by "the mere procedural device of adding the Trustee as a nominal, involuntary

plaintiff"); In re Interstate Motor Freight Sys. IMFS, Inc., 71 B.R. 741, 746-47 (Bankr. W.D.

Mich. 1987) (employee benefit funds lacked standing to bring §506(c) action and could not cure

lack of standing by joining trustee as involuntary plaintiff).[26]


### b. the cases the Debtor relies upon to justify naming the Trustee as an involuntary plaintiff are inapposite

Finally, to justify naming the Trustee as a plaintiff in this AP, the Debtor's counsel relies

heavily on Fisher and Rice -- the two federal cases described briefly in n.15, supra, that concern a

debtor's ability to avoid a mortgage that has been improperly notarized.   I have considered those

opinions and find that they do not alter my conclusion that the Trustee has not been joined

---

[25]      If anything, the Debtor's procedural sleight of hand in naming the Trustee as a
party plaintiff to compel the Trustee to prosecute an avoidance action may constitute an improper
invasion of the powers of the Trustee.   The respective roles of a debtor and trustee to employ the
Code's avoidance powers is further discussed below in Part VI.

[26]      This case does not present the issue frequently referred to as "derivative
standing," i.e.,  whether, after a chapter 13 trustee has declined to initiate an avoidance
proceeding, a chapter 13 debtor who cannot exercise the trustee's avoidance powers
independently through §522(g)(1) and (h) may obtain court approval and exercise derivative
standing to bring the avoidance proceeding.   See generally In re Official Committee of
Unsecured Creditors of Cybergenics Corp., 330 F.3d 548, 553 (3d Cir. 2003) (bankruptcy court
has equitable power to authorize a creditors' committee to exercise avoidance powers of a
chapter 11 debtor).

29

validly in this adversary proceeding.

From the discussion provided in the "supplemental history" section of the <u>Rice</u> opinion, it appears that the debtor in <u>Rice</u> brought the avoidance action in the trustee's name alone.  The court stated:

> The Debtor appears to have slightly misunderstood the nature
> of §§ 522(h) and 522(g)(1).  These Code sections permit
> <u>her</u> to avoid certain transfers if the Trustee does not attempt
> to do so.  However, she has named only the Trustee, who has
> already expressed that he has no interest in the transaction  . . .
> as the plaintiff in this proceeding rather than herself.

<u>Rice</u>, 133 B.R. at 724.  The court then observed that the trustee's apparent lack of interest "could have presented an issue." <u>Rice</u>, 133 B.R. at 724.  However, because the debtor's ability to bring the avoidance action on the trustee's behalf, standing in the trustee's shoes, had not been questioned by the defendant, the court chose to treat the issue as having been waived.  By comparison, here, the issue <u>has</u> been raised in the preliminary phase of the litigation.

Turning to <u>Fisher</u>, according to the reported opinion, the case is described as having been brought jointly – the court describes the case as involving "a debtor's and the bankruptcy trustee's . . . attempt to avoid foreclosure on a parcel of real property."  <u>Fisher</u>, 320 B.R. at 56. Thus, regardless whether the debtor was a proper party, it appears that the <u>Fisher</u> trustee took affirmative action to assert his statutory avoidance powers.

In any event, in neither <u>Fisher</u> nor <u>Rice</u> is there any suggestion that the issue of the debtor's ability to involuntarily name the trustee as plaintiff so as to take advantage of the trustee's strong arm powers was raised by the parties or reached by the court.  Accordingly, I find that neither case persuades me that the Debtor's position has any merit.

### B. The Debtor Lacks Statutory Authority to Maintain the §544 Avoidance Action

#### 1. the elements of the statutory scheme authorizing a debtor to invoke the trustee's avoidance powers: 11 U.S.C. §522(g)(1) and (h)

Having determined that Rule 19 does not authorize the Debtor to join the Trustee as an involuntary plaintiff, the next question is whether the Bankruptcy Code provides any other authority for the Debtor to invoke the trustee's avoidance powers. To answer this question, it is helpful to take a step back and examine the respective roles that a bankruptcy debtor and a trustee play in chapter 13 cases, particularly in connection with assets that may constitute "property of the estate."

The starting point in this system is the distinction between property of the bankruptcy estate that is "non-exempt" and estate property that a bankruptcy debtor has the right to claim as "exempt." Upon the commencement of a bankruptcy case, most of the bankruptcy debtor's property interests become bankruptcy estate property, see 11 U.S.C. §§541(a), 1306, and, as such, are available for payment of creditors' claims.[27] Such property is frequently referred to as being "non-exempt." However, the Bankruptcy Code provides a mechanism for individual bankruptcy debtors to protect or "exempt" certain property from property of the bankruptcy estate (and, therefore, from their creditors). See 11 U.S.C. §522(b)(1). The purpose of the Bankruptcy Code's exemption provisions is to foster the historic "fresh start" goals embedded in modern

---

[27]    In a chapter 7 case, a debtor's "non-exempt" property is subject to liquidation and distribution to the debtor's creditors by the chapter 7 trustee. In a chapter 13 case, a debtor must propose to pay the value of his or her non-exempt property to unsecured creditors (i.e., the "non-exempt" property that would be subject to liquidation in a chapter 7 case), to satisfy one of the legal standards entitling the debtor to confirmation of a chapter 13 plan. See 11 U.S.C. §1325(a)(4). To accomplish the analytic purposes of this discussion, I will limit myself to principles relating to chapter 7 and chapter 13 cases of individual debtors.

31

bankruptcy policy by permitting a debtor to maintain assets sufficient for the basic necessities of

life.  See, e.g., In re Clark, 711 F.2d 21, 23 (3d Cir. 1983) (citing H.R.Rep. No. 595, 95th Cong,

1st. Sess. 126 (1977) as reprinted in 1978 U.S.C.C.A.N. 5787, 5963, 6087)).  The consequence

of the assertion of valid exemption is that an individual debtor's exempt property is not

liquidated in a chapter 7 case and is not included in the calculation of the amount unsecured

creditors are entitled to receive in distribution in a chapter 13 case under 11 U.S.C. §1325(a)(4).

Typically, a prepetition "transfer"[28] of property (however accomplished and whether the

debtor transferred his or her entire interest in the property or only a fractional part thereof)

extinguishes the debtor's ability to claim an exemption in the transferred property interest. This is

because once transferred prepetition, the debtor's interest in the property will not be property of

the estate upon the filing of the bankruptcy case,[29] the result being that there is nothing in the

estate for the debtor to exempt.

---

[28]     Section 101(54) of the Code defines the term "transfer" to mean:

> (A) the creation of a lien;
>
> (B) the retention of title as a security interest;
>
> (C) the foreclosure of the debtor's equity of redemption; or
>
> (D) each mode, direct or indirect, absolute or conditional,
> voluntary or involuntary of disposing of or parting with --
>    (I)  property; or
>    (ii) an interest in property.

The Code does not define the term "an interest of the debtor in property."  Generally,  state law
determines what interest, if any, a debtor has in property.  See Butner v. United States, 440 U.S.
48, 54, 99 S.Ct. 914, 918 (1979); In re O'Dowd, 233 F.3d 197, 202 (3d Cir. 2000).

[29]     See 11 U.S.C. §541(a)(1) (defining property of the estate as "all legal and
equitable interests of the debtor in property as of the commencement of the case").

Sections 522(g) and (h) of the Bankruptcy Code promote the goals of the statutory exemption provisions by providing the debtor with a means – subject to certain limitations -- of (1) exempting prepetition transfers of property that the trustee recovers and brings into the bankruptcy estate or (2) independently exercising Code remedies for recovery of property that was transferred prepetition and then exempting the recovered property.   See 4 Collier on Bankruptcy ¶522.12, at 97-102 (15th rev. ed. 2006).

Section 522(g)[30] enhances the debtor's exemption rights by empowering the debtor to exempt property that a trustee recovers through exercise of, inter alia, the trustee's avoidance powers.  See In re Flitter, 181 B.R. 938 (Bankr. D. Minn. 1995).  Significantly, the debtor's right to exempt property the trustee recovers is subject to two (2) conditions, that:  (1)  the transfer of property was involuntary and (2) the debtor did not conceal the property involved.

Section 522(h) provides the debtor with the second tool mentioned above – the power to

_____

[30]      Section 522(g)(1) provides:

(g)  Notwithstanding sections 550 and 551 of this title, the debtor may exempt under subsection (b) of this section property that the trustee recovers under section 510(c)(2) [relating to subordination of liens], 542 [relating to turnover of property to the estate], 543 [relating to turnover of property by a custodian], 550 [relating to liability for avoided transfers], 551 [relating to preservation of avoided transfers] or 553 [relating to setoff] of this title, to the extent that the debtor could have exempted such property under subsection (b) of this section if such property had not been transferred, if ---

(1)(A)  such transfer was not a voluntary transfer of such property by the debtor; and

(B) the debtor could have avoided such transfer under subsection (f)(1)(B) of this section.

33

use the trustee's transfer avoidance powers to recover property that may be exempted.[31]  The

debtor may invoke these avoidance powers, which are "ordinarily reserved to the bankruptcy

trustee," if the trustee fails to do so <u>and</u> the property in question could have been claimed as

exempt.  <u>In re Myers</u>, 262 B.R. 445, 447 (Bankr. N. D. Ind. 2001).  In this AP, for example, the

Debtor seeks to avoid her obligation to HFC on the Sellersville Property by utilizing the

Trustee's strong arm powers in 11 U.S.C. §544(b)(1).  Section 544(b)(1) would enable the

Trustee (into whose shoes the Debtor seeks to step) to avoid the HFC Mortgage if that obligation

would not have bound a bona fide purchaser at the time the Debtor filed her claim for relief

under chapter 13.  <u>See, e.g.</u>, <u>In re Fisher</u>, 320 B.R. at 62.

　　　　The last part of the statutory structure has the most relevance for present purposes.

Section 522(h), the source of the debtor's right to use the trustee's avoidance powers, also

imposes two (2) limitations.  It refers back to subsection (g)(1), thereby prohibiting the debtor

from invoking the trustee's avoidance powers to avoid transfers that were <u>voluntary</u> or to recover

---

[31]　　　Section 522(h) provides:

(h)  The debtor may avoid a transfer of property of the debtor or
recover a setoff to the extent that the debtor could have exempted such
property under subsection (g)(1) of this section if the trustee has avoided
such transfer, if ---

(1) such transfer is avoidable by the trustee under section 544
[relating to the trustee's authority to avoid certain transfers as
a lien creditor or successor to certain creditors and purchasers],
545 [relating to the trustee's authority to avoid statutory liens],
547 [relating to preferences], 548 [relating to fraudulent transfers],
549 [relating to postpetition transactions] or 724(a) [relating to
avoidance of certain liens] of this title or recoverable by the
trustee under section 553 [relating to setoffs] of this title; and

(2)　　the trustee does not attempt to avoid such transfer.

property that the debtor <u>concealed</u>.  The policy reasons why Congress would limit a debtor's right

to exercise a trustee's avoidance powers in this manner are self-evident.

Where all of the statutory prerequisites under §522(g)(1) and (h) have been satisfied,[32] a

debtor may use the trustee's avoiding powers for his or her own benefit.  As explained below, I

conclude that these statutory prerequisites have <u>not</u> been met in this case.

### 2.  the §522(h) requirement that the trustee has not attempted to avoid the transfer

In evaluating whether the conditions have been satisfied for the Debtor to invoke the

Trustee's avoidance powers under §522(h), I observe at the outset that there is an inherent logical

inconsistency in the Debtor's position.  That is, while the Debtor has asserted an ability to bring

this avoidance action in her capacity as a bankruptcy debtor – which, under section 522(h) she

may do <u>only</u> if the trustee fails to bring such an action – at the same time, she purports to bring

this avoidance action on her own behalf <u>and</u> on behalf of the Standing Chapter 13 Trustee.

I will not dwell on this apparent inconsistency, however, because I have already

determined that (1) the Trustee is not a voluntary plaintiff in this AP and (2) the Trustee has been

named properly as an involuntary plaintiff.  This suggests that the Trustee has not attempted to

avoid the transfer.  Because, however, as explained below, the AP Complaint is deficient on

---

[32]    Some courts have described §522(h) as being composed of five (5) elements: (1)
the transfer was not a voluntary transfer of property by the debtor; (2) the debtor did not conceal
the property; (3) the trustee did not attempt to avoid the transfer; (4) the transferred property is of
a kind that the debtor would have been able to exempt from the estate if the trustee had avoided
the transfer under § 522(g); and (5) the debtor seeks to exercise one of the trustee's avoidance
powers enumerated in § 522(h).  <u>See</u> <u>Matter of Hamilton</u>, 125 F.3d 292, 297 (5th Cir. 1997); <u>In
re DeMarah</u>, 62 F.3d 1248, 1250 (9th Cir. 1995); <u>In re Steck</u>, 298 B.R. 244, 248-249 (Bankr.
D.N.J. 2003).

other grounds, I need not base my ruling on a determination whether this requirement of §522(h)

has been satisfied in the circumstances presented here.

### 3. the Debtor's factual allegation regarding the alleged involuntariness of the mortgage transaction renders the Debtor's §544 claim legally deficient

The Bankruptcy Code does not define the term "voluntary".  Bankruptcy courts have

generally concluded, however, that an <u>involuntary</u> transfer "occurs when . . .  property is

transferred by operation of law, such as by means of an execution of judgment, repossession, or

garnishment."  <u>Berman v. Forti</u>, 232 B.R. 653, 656 (D. Md. 1999) (citations omitted), <u>aff'd</u>, 203

F.3d 820 (4th Cir. 2000); <u>see also</u> <u>In re Smith</u>, 333 B.R. 739, 745 (Bankr. D. Md. 2005); <u>In re</u>

<u>White</u>, 258 B.R. 129, 132 (Bankr. D.N.J. 2001).  Additionally, a "transfer is also involuntary if it

resulted from 'fraud, material misrepresentation or coercion.'" <u>Berman</u>, 232 B.R. at 656

(citations omitted).[33]

Scrutinizing the AP Complaint for allegations regarding voluntariness, I find that the

Debtor has alleged that the entry of the Non-Jury Verdict in HFC's favor was not voluntary.  AP

Complaint, ¶17.  However, this contention does not assist the Debtor with respect to the §544

---

[33]     <u>Accord</u> <u>In re Ross</u>, 1997 WL 331830, at *3 (Bankr. E.D. Pa. June 10, 1997)
(quotations and citations omitted) (per Sigmund, J.):

> [A voluntary transfer occurs] when a debtor, with knowledge of all essential facts
> and free from the persuasive influence of another, chooses of her own free will to
> transfer property to the creditor. A voluntary transfer does not occur where a
> creditor has harassed, insulted, and shamed a debtor into transferring the property
> to a creditor. Nor has a voluntary transfer occurred where a creditor has concealed
> or failed to inform a debtor of the essential facts necessary for the debtor to make
> an intelligent decision on whether to transfer the property to the creditor. This is
> especially true where a debtor can show that she would not have made the transfer
> had she been informed of all the essential facts.

36

claim because the transfer that is the subject of that claim is the grant of the HFC Mortgage, not the Non-Jury Verdict.

With one possible exception, the AP Complaint contains no allegation that the Debtor's grant of the HFC Mortgage itself was involuntary.[34]  That exception is the Debtor's allegation that her signatures on the HFC Mortgage and Note are forgeries.  AP Complaint, ¶7.  It is not difficult to conceptualize how a forged signature on a mortgage purporting to effect a transfer of a debtor's interest in real property is not the product of a debtor's volition and therefore, is involuntary.

HFC has argued that the Debtor is precluded by the doctrine of collateral estoppel from reasserting her claims of forgery in this AP.  I need not determine whether HFC is correct and whether Pennsylvania would accord preclusive effect to state court findings that have not yet ripened into a judgment at the trial court level,[35] however.  That is because even assuming that

---

[34]    At the hearing on HFC's Motion to Dismiss, the Debtor pressed her argument that the notary who signed the HFC Mortgage documents was not present at the settlement.  See N.T. at 29-30.  If Rice and Fisher, see n.15, supra, were correctly decided, this technical defect may have legal consequences in some circumstances, i.e., giving rise to a right of third parties to "take free and clear" of the mortgage.  However, the allegation that the notary was not present at the settlement does not amount to an allegation that the Debtor's conveyance of an interest in the Sellersville Property was "involuntary" within the meaning of 11 U.S.C. §522(g).  The fact that the mortgage was notarized outside the presence of the Debtor, by itself, does not suggest that the Debtor's execution of the mortgage documents was not the product of her own free will.  See In re Terry, 56 B.R. 538 (Bankr. D. Vt. 1986).

[35]    See Dougherty v. Lehigh Coal & Navigation Co., 52 A. 18 (Pa. 1902) (jury verdict is not accorded preclusive effect because it is not equivalent of a final "judgment" for collateral estoppel purposes); MIXX Insur. Co. v. Epstein, 2007 WL 4150949, at *3 (Pa. Super. Ct. Nov. 26, 2007) (trial court's refusal to apply the doctrine of collateral estoppel to a jury verdict that had not been reduced to a judgment affirmed, in part, because the doctrine requires that there first be a  final "judgment" on the merits); 50 C.J.S. Judgments §789 (2007) (stating the proposition that, subject to some exceptions, a verdict or finding is not conclusive on the parties in a subsequent suit unless a judgment is entered thereon because "the force of the

(1) the Debtor is <u>not</u> collaterally estopped from pressing her forgery claim and (2) that the

Debtor's allegation that the HFC Mortgage documents were forged is the equivalent of alleging

that the transaction was "involuntary" for purposes of §522(g)(1), the Debtor still faces an

insurmountable obstacle to the maintenance of this AP.

The Debtor's problem is that the logical outcome of her contention that the mortgage

documents were forged is that there was no "transfer" of property to avoid.  Under Pennsylvania

law, a purported transfer based on a forgery does not pass title.[36]  It would make no sense to seek

to use §544 to avoid a transfer of property that did not occur.

Indeed, the facts assumed above would be similar to those in <u>In re Myers</u>, 262 B.R. 445

(Bankr. N.D. Ind. 2001).  In <u>Myers</u>, a chapter 7 debtor and his wife brought an adversary

proceeding seeking to use the trustee's strong arm powers under §544(a)(3) to have a bankruptcy

court declare a mortgage on their property invalid.  The debtor and his wife contended that the

wife's signature on the mortgage was a forgery.  <u>Id.</u> at 447.  The court reasoned:

> Both parties have built their arguments upon an erroneous assumption.
> The Plaintiffs, by seeking to use §522(h) to avoid the "transfer"
> represented by the forged mortgage, and the Defendant, by arguing that
> as to the debtor the "transfer" was voluntary, are working from the proposition
> that a forged mortgage has some type of validity.  This assumption is wrong.
> A forged mortgage - be it a deed or a mortgage - conveys nothing.  It is a

---

estoppel of a judgment is in the judgment itself").  <u>But see</u>  <u>In re Belmonte</u>, 240 B.R. 843 (Bankr.
E.D. Pa. 1999) (per Raslavich, J.) (bench verdict is sufficiently firm to be accorded preclusive
effect under Pennsylvania law even before it matured into a trial court judgment), <u>rev'd</u>, 279 B.R.
812 (E.D. Pa. 2001) (bench verdict is too procedurally indefinite to be accorded preclusive
effect).

[36]      <u>See</u> <u>Harris v. Harris</u>, 239 A.2d 783, 784-85 (Pa. 1968); <u>Smith v. Markland</u>, 72 A.
1047, 1055-56 (Pa. 1909); <u>Flitcraft v. Commonwealth Title Ins. & Trust Co.</u>, 60 A. 557
(Pa.1905); <u>Reck v. Clapp</u>, 1881 WL 14613, at *4 (Pa. Oct. 17, 1881); <u>see also</u> <u>Bennerson v.
Small</u>, 842 F.2d 710, 714 (3d Cir. 1988).

nullity.  Consequently, a forged mortgage is invalid . . . and does not transfer
any interest in property. . . .

Once we realize that a forged mortgage does not transfer any kind of an
interest in property, it becomes clear that Plaintiffs' reliance upon the trustee's
avoiding powers is misplaced.  There is a significant difference between
avoiding a transfer and declaring that no transfer has ever occurred.  The first
seeks to reverse the flow of events and return the parties to the position they
previously occupied.  The second says that nothing has ever happened.
In challenging the validity of the Defendant's mortgage, Plaintiffs are
really asking the court to determine whether a transfer ever occurred, not
to undo one.  Such a determination is not within the scope of §522(h).

. . . .

Section 522(h) only allows a debtor to prosecute actions designed to
avoid a transfer of property.  It does not authorize suits seeking declaratory
relief.  The present action seeks only declaratory relief -- that Defendant's
mortgage is an invalid forgery - and not the avoidance of any transfer to
the Defendant.  Accordingly, it is not based upon and states no claim under
§522(h).

In re Myers, 262 B.R. at 448-449 (citations omitted).

Here, as in Myers, state law provides that forged transfer documents do not pass title. See

n.36, supra.  If there was no "transfer of property," there is no transfer avoidance claim under

§544.  Absent proof of forgery, no plausible argument has been pled that the transaction was

involuntary.  If there was a forgery, there is no transfer to avoid.[37]  Either way, the Debtor's

position is untenable.

While it is unlikely that the Debtor could plead other facts that would satisfy the

---

[37]    Proof of forgery, and the concomitant absence of a valid transfer of the Debtor's
interest, would provide a basis for a direct attack on HFC's secured claim through an objection
to HFC's claim, as opposed to the current attempt to avoid HFC's secured interest in the Sellersville
Property.  Undoubtedly, such a challenge would lead back to HFC's contention that the Non-Jury
Verdict should preclude further litigation of the forgery issue.  To date, no such objection has
been filed by any party and I reiterate that I do not reach the collateral estoppel issue.  See n.35,
supra & accompanying text.

preconditions found in §522(g)(1) and (h) necessary for her to assert a §544 claim, I will give the

Debtor a brief period of time to file an amended complaint.  This is because I cannot completely

rule out the possibility that such other facts exist.  See, e.g. Alston v. Parker, 363 F.3d 229, 235

(3d Cir. 2004) ("[w]e have held that even when a plaintiff does not seek leave to amend, if a

complaint is vulnerable to 12(b)(6) dismissal, a District Court must permit a curative amendment,

unless an amendment would be inequitable or futile").  If the Debtor fails to file an amended

complaint, the dismissal of the §544 claim will be with prejudice.  With respect to the Trustee,

the dismissal of the claim will be without prejudice.


### 4. the Debtor may not invoke the Trustee's avoidance powers without satisfying the requirements of 11 U.S.C. §522(g)(1) and (h)

There is one last issue relating to the Debtor's authority to assert the §544 claim.

I am aware of a line of decisions in which courts have held that a chapter 13 debtor has an

independent right to exercise the trustee's avoidance powers without regard to 11 U.S.C.

§522(g)(1) and (h).[38]  The most thorough analysis is found in In re Cohen, 305 B.R. 886, 895-90

(B.A.P. 9th Cir. 2004).  In Cohen, the court employed a "holistic" approach to construction of the

Code and, after considering the interrelationship of a number of Code provisions (including

§§1302(b)(1), 1303, 1306(b), 541(a)(3), 1321, 1322(b)(8), 1325(a)(4)), concluded that a chapter

13 debtor concurrently holds the avoidance powers of the chapter 13 trustee.  See 305 B.R. at

---

[38]      Although the Debtor did not specifically argue that she may bring this avoidance
action without regard to §522(g)(1) and (h), the argument is only a modest variant on the
articulated arguments made in support of the Debtor's position that she is entitled to invoke the
Trustee's avoidance powers.  Therefore, I consider it appropriate to consider the merits of the
issue.

895-900.

If I were to follow this line of cases, the "involuntariness" requirement of §522(g)(1) and (h) and the forgery issue would be immaterial.  However, there is contrary authority.  For example, in In re Ryker, 315 B.R. 664, 668 (Bankr. D.N.J. 2004) the bankruptcy court reasoned that:

> The statutory construction found by Cohen . . .  is plausible, but it is ultimately not persuasive because it gives no consideration to the plain language of the statute. Moreover, a reading of the statute in which only the Chapter 13 trustee has standing to prosecute avoidance actions is not inconsistent with the other rights and responsibilities of a Chapter 13 debtor, and is no real impediment to proposing or performing a Chapter 13 plan.

After reviewing the competing lines of precedent, I agree with and will follow Ryker.  I find the Code to be clear and unambiguous on the subject of a debtor's authority to exercise the trustee's avoidance powers and conclude that implying additional rights to chapter 13 debtors does violence to the balance of rights among debtors, trustees and creditors that has been carefully constructed in the statute.  See also 11 U.S.C. §103(a) (except as provided in §1161, chapter 5 of the Code applies in cases under chapter 13).

Therefore, I hold that the Debtor may not maintain her avoidance actions in her capacity as a chapter 13 debtor without satisfying the requirements of 11 U.S.C. §522(g)(1) and (h).  Because she cannot do so, the §544 claim must be dismissed.

# VII.  ASSUMING <u>ARGUENDO</u> THAT THE DEBTOR MAY ASSERT THE §547 CLAIM, HER CLAIM IS LEGALLY DEFICIENT

In support of her §547 claim, the Debtor alleged that the entry of the Non-Jury Verdict was a transfer of an interest in her property and, because she contested the Foreclosure Action that resulted in the Verdict, that transfer of property was involuntary.  Accepting the Debtor's premise that the entry of the Non-Jury Verdict was involuntary (a premise that is intuitive), I nevertheless find that Count I does not state a valid claim.  I fail to see how the Non-Jury Verdict effected a further "transfer" of the Debtor's property interests beyond that already transferred by the grant of the mortgage.

Mortgages have a dual nature under Pennsylvania law.  There are cases that recognize that a mortgage acts as a conveyance of property or title between the mortgagor and mortgagee ("the title theory") and others that acknowledge that a mortgage acts a lien between the mortgagor and mortgagee and third parties ("the lien theory").  <u>See</u> <u>generally</u> <u>Pines v. Farrell</u>, 848 A.2d 94 (Pa. 2004) (examining state and federal cases applying Pennsylvania law and the seeming vitality of both theories in Pennsylvania).[39]  Notably, application of either the title or lien theory in this AP would result in a finding that the <u>mortgage transaction itself</u> was a "transfer of an interest of the debtor in property."  <u>See</u> 11 U.S.C. §101(54) (defining a "transfer" to include "the creation of a lien").  The question, then, is given the transfer effected by the Debtor's grant of the mortgage,

---

[39]    <u>See generally</u> <u>Sovereign Bank v. Schwab</u>, 414 F.3d 450, 453 n. 5 (3d Cir. 2005) ("Pennsylvania follows the title theory whereby the mortgage is considered a conveyance in fee simple to the creditor,"); <u>Commerce Bank v, Mountain View Village, Inc.</u>, 5 F.3d 34, 38 (3d Cir. 1993) ("[i]n defining the relationship between mortgagor and mortgagee, Pennsylvania follows the title theory where the mortgage is considered a conveyance in fee simple to the creditor.") (citing <u>Randal v. Jersey Mortg, Inv. Co.</u>, 158 A. 865 (Pa. 1932)).

was there any further "transfer" effected by the entry of the Non-Jury Verdict?

As HFC points out, a mortgage foreclosure judgment serves as a sort of "way-station in the process which culminates in the judicial sale of mortgaged property." HFC Mem. of Law, at 9. By definition, the foreclosing mortgagee already has a lien against the property being foreclosed. As such, the entry of a non-jury verdict in a foreclosure action does not effect a further transfer of the mortgagor's interest in the mortgage property. Indeed, not even the entry of a judgment in foreclosure -- and here, only a non-jury verdict was entered -- in favor of a mortgagee would effect a further transfer of the mortgaged property. The entry of judgment is a simply procedural prerequisite to a foreclosure sale of the Sellersville Property. It is the foreclosure sale that takes place after the entry of judgment that results in a "transfer" of the mortgaged property because the sale alters the mortgagee's legal and beneficial interest in the property. See In re Rouse, 48 B.R. 236, 240 (Bankr. E.D. Pa. 1985) (at conclusion of sheriff's sale, purchaser obtains equitable interest in the subject property, with legal title passing upon acknowledgment and delivery of the sheriff's deed); Matter of Russell, 8 B.R. 342, 345 (Bankr. W.D. Pa. 1980) (same). There is no foreclosure sale at issue in this case.[40]

Because I conclude that the only pertinent "transfer" in this AP was the grant of the HFC Mortgage, which occurred in November 2004, (more than ninety days before the commencement of this bankruptcy case), Count I fails to state a cognizable claim upon which relief may be

---

[40]    The cases cited by the Debtor, in support of her argument that the Non-Jury Verdict accomplished a further "transfer" of the Debtor's property beyond that accomplished by the mortgage transaction itself are inapposite. The Debtor relies upon In re Rambo, 297 B.R. 418 (Bankr. E.D. Pa. 2003) and In re Andrews, 262 B.R. 299 (Bankr. M.D. Pa. 2001). In both Rambo and Andrews, the "transfer" was the foreclosure sale of the Debtor's residence. See In re Rambo, 297 B.R. at 423; In re Andrews, 262 B.R. at 303. There was no foreclosure sale here; merely a foreclosure lawsuit culminating in a state court "decision," i.e., the Non-Jury Verdict.

granted.  See 11 U.S.C. §547(b)(4).  Accordingly, I will dismiss Count I of the AP Complaint.

Given the underlying facts and circumstances in this AP, I perceive no possibility that the Debtor

can plead additional facts to cure the defect in her §547 claim.  Therefore, unlike the dismissal of

the §544 claim, the dismissal of the §547 claim is without leave to amend.

## VIII.  CONCLUSION

In conclusion, I find that: (1) neither the doctrines of  Rooker-Feldman nor Younger

abstention require dismissal of this AP; (2) the Debtor's §544 claim should be dismissed, but

with leave to file an amended complaint; and (3) the Debtor's §547 claim should be dismissed

without leave to amend.

An Order consistent with the Opinion follows.

**Date:    February 5, 2008**                    _____
                                                **ERIC L. FRANK**
                                                **U.S. BANKRUPTCY JUDGE**

44

**UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| In re | : | |
| | : | **Chapter 13** |
| **ERMA C. FUNCHES,** | : | |
| | : | **Bky. No. 07-13883ELF** |
| Debtor. | : | |
| | : | |
| **ERMA C. FUNCHES and** | : | |
| **WILLIAM C. MILLER,** | : | |
| | : | |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **HOUSEHOLD FINANCE CONSUMER** | : | |
| **DISCOUNT COMPANY,** | : | **Adv. No. 07-00270ELF** |
| | : | |
| **Defendant.** | : | |
| | : | |

# <u>O R D E R</u>

**AND NOW**, upon consideration of the Motion to Dismiss Complaint ("the Motion") filed by Household Finance Consumer Discount Company ("HFC"), and after a hearing, and upon consideration of the post-hearing written submissions of the parties, and for the reasons stated in the accompanying Memorandum Opinion,

It is hereby **ORDERED** that:

1. The Motion to Dismiss is **GRANTED**.

2. The Debtor's Complaint is **DISMISSED**.

3. The dismissal of Count I is **WITH PREJUDICE**.

4. The dismissal of Count II is **WITHOUT PREJUDICE**. The Debtor is **GRANTED LEAVE** to file an Amended Complaint setting forth grounds, if such grounds exist, satisfying the

conditions found in 11 U.S.C. §522(g)(1) and (h).  Such Amended Complaint shall be filed and

served on or before **February 26, 2008**.

5.   If the Debtor fails to file an Amended Complaint in a timely fashion under Paragraph 4 of this

Order, the **DISMISSAL** of Count II the Complaint shall be **WITH PREJUDICE** as to the

Debtor.

6.   The **DISMISSAL** of all Counts of the Complaint is **WITHOUT PREJUDICE** to the rights

of the Chapter 13 Trustee.

Date:   **February 5, 2008**

                                  **ERIC L. FRANK**
                                  **U.S. BANKRUPTCY JUDGE**

**Counsel**
David A. Scholl
Attorney for Plaintiff

William J. Levant
Michael Coughlin
Attorneys for Defendant